COLE, Judge.
Plaintiffs contest the findings of the trial court as to defendants’ liability for the injuries to James Christopher Juge and as to the amount awarded Judy Juge for her injuries. The facts giving rise to this litigation are as follows:
On September 3,1977, plaintiff Judy Juge stopped her automobile on Perkins Road waiting for the car in front of her to make a left-hand turn onto Valley Street when a vehicle driven by defendant Albert Cunningham struck her from the rear. At the time Mrs. Juge was beginning her ninth month of pregnancy. At the scene of the accident Mrs. Juge complained of a headache and pain in her back. She was taken to Woman’s Hospital by ambulance and was admitted for overnight observation. Although she reported her abdomen had struck the steering wheel of the car there were no signs of fetal distress or of disengagement of the placenta. She was discharged the next day.
*1255 That day or shortly thereafter Mrs. Juge experienced slight vaginal bleeding (referred to in the medical profession as “spotting”) and was told by her doctor (Dr. Roy Rabalais) or his nurses she should stay in bed until the bleeding stopped. The spotting continued off and on for several weeks. On September 24th Mrs. Juge went into labor and shortly thereafter delivered a baby boy, James Christopher Juge. The child weighed five pounds, seven ounces and appeared to be normal.
Within a few weeks the Juges noticed the child was having “seizures” which involved a tensing of the body for a few seconds. After consulting several local pediatricians who were unable to diagnose the child, they sought help from Dr. Carmela Tardo, a physician with the Ochsner Clinic who specializes in child development. After careful examination and testing she diagnosed the child as having tuberous sclerosis. This is an inherited condition which involves overgrowth of tissue, particularly within the central nervous system. The child was found to be profoundly retarded and his condition was described as a permanent one.
Mrs. Juge filed suit against Mr. Cunningham for her injuries and her husband, James Juge, joined her as a plaintiff, suing for his own expenses and for injuries to the minor son. Plaintiffs alleged the child was seriously injured while in the uterus due to defendant’s negligence and as a result of the injuries suffered permanent damage.
At trial the defendant stipulated as to his liability. Therefore, the only issues before the court were the existence of and the extent of injuries to Mrs. Juge and to the child.
After hearing the evidence and examining the depositions of various doctors, the trial court rendered judgment in favor of plaintiffs for $5,824.12. This award included $5,000 for Mrs. Juge’s physical injuries and for her mental anguish associated with receiving an injury while pregnant. Mr. James Juge was awarded $824.12 in special damages. No award was given for injuries to the child because the court found plaintiffs failed to prove any injuries were caused by the accident.
After carefully reviewing the record we agree with the trial court plaintiffs failed to prove the child’s condition was caused or aggravated by the defendant’s negligence.
Dr. Carmela Tardo testified by deposition she had examined the child and diagnosed his condition as tuberous sclerosis. She testified the condition was not related to trauma but was an inherited birth defect. She stated unequivocally that in her opinion there was no relation whatsoever between the accident and the child’s condition.
Dr. Roy Rabalais, an expert in the field of obstetrics and gynecology, testified he was Mrs. Juge’s physician during her pregnancy but was out of town on the date of the accident. His colleague, Dr. Karl Pizzo-lato, examined Mrs. Juge at Woman’s Hospital and his records indicated he found no evidence of fetal distress. Further, there was no evidence of abruptio placenta (separation of the afterbirth) or of any uterine damage.
Dr. Rabalais examined Mrs. Juge on September 8, 1977, and found no evidence of bleeding. He was aware Mrs. Juge had called his office several times after the accident to report she was spotting but he was unsure as to the date of the initial call.[1] She was instructed to stay in bed. When asked whether or not he felt the bleeding could have damaged the unborn child, he replied he felt it unlikely due to the very small amount of bleeding that occurred. Dr. Rabalais could not say for sure whether or not the accident had caused the bleeding at all. He noted any bleeding brought on by the accident would have likely occurred immediately and that it was not extremely uncommon for women to experience spotting in the late stages of pregnancy. Even assuming the bleeding was related to the *1256 accident he felt the specific cause was the jolt of the accident rather than any specific internal bruise or injury.
When asked whether or not he felt the accident caused the child to be born prematurely, he stated he did not think so. He felt the time period between the accident and the onset of labor (21 days) indicated there was no relation between the two events. If the accident had in fact caused the premature labor he felt the labor would have begun much sooner than it did. Although there was some confusion in the testimony concerning exactly how prematurely the birth occurred, Dr. Rabalais testified the expected date of birth was October 9. Therefore, the child was born two weeks and two days early. Dr. Rabalais stated this was not a remarkable occurrence in that many women give birth two weeks before or two weeks after their due date.
Dr. Emmanuel Shapira, a medical expert in pediatric pathology and genetics, testified by deposition. He agreed with the diagnosis of tuberous sclerosis and noted the evidence indicated the child was the first in his family to exhibit signs of the disease.[2] Dr. Shapira acknowledged there was a possibility the trauma of the accident could have aggravated or accelerated the condition but he could not make any conclusive statements as to the actual effect the accident had on this child. When questioned as to the possible effects of Mrs. Juge’s bleeding he stated he did not have the information necessary to give an opinion, it would depend upon the amount of the bleeding and the existence of any signs of fetal distress. Although the attorney for plaintiffs repeatedly pressed Dr. Shapira to make some definitive statement concerning the possible or probable effects of the accident on the child’s condition, Dr. Shapira refused to do so, insisting any such opinion would be based upon speculation. Dr. Sha-pira stated:
“I think I understand your question but there are two unrelated events. One is an inherited disorder, tuberous sclerosis and one is an accident. How much to each of them and to what extent were expressed in a clinical features (sic) or the clinical expressions of the patient I don’t know.”
At the close of the deposition the following exchange between counsel and Dr. Shapira occurred.
“Q. You indicated several times that we are dealing with two different events, tuberous sclerosis and a potential possible trauma to the fetus. The courts and lawyers have to deal doctor with reasonable medical certainty when we talk about how an individual life has been affected as a result of an accident. You have told us that the child has tuberous sclerosis did that predate this accident?
A. That’s correct.
Q. And you have told us that you can’t tell if the accident itself increased, modified or otherwise aggravated the symptoms of that tuberous sclerosis?
A. That’s correct. I used the words accelerated or accentuated for presentation, but I don’t know.
Q. And you can’t tell us that with any reasonable medical degree of certainty?
A. That’s correct.
Q. That that has occurred?
A. I have only my doubt that I really don’t know.”
This evidence clearly shows plaintiffs failed to prove by a preponderance of the evidence the child’s condition was caused or aggravated by the accident. Although the child’s condition is a sad and unfortunate occurrence, we cannot hold defendant liable without adequate proof. The evidence establishes the disease is an inherited disorder that the child developed prior to the accident, and although the accident could have aggravated the condition, there was no evidence to show that this in fact happened.
*1257 Concerning Mrs. Juge’s own injuries, the following evidence was put forth. Mrs. Juge testified she experienced a severe headache and pain in her back immediately after the accident. In the period between the accident and the date of trial (February 19, 1981) she continued to experience headaches about three times a week as well as frequent backaches and occasional neck-aches. Dr. Samuel Irwin, an orthopedic surgeon, had treated Mrs. Juge approximately six times up until February of 1981, for her back and neck pains. His final opinion was Mrs. Juge had suffered a strain to her neck and lower back. He noted some of the pain could be caused by her weakened condition due to pregnancy.[3] He stated the symptoms of a “whiplash” syndrome would be expected to subside six to eight weeks after the accident. In all of his examinations he could find no objective signs of any damage to the back or neck. He noted a pregnant woman is more susceptible to back strain and that after delivering a baby a woman’s abdominal muscles are weak so that any back condition may be aggravated.
Dr. David Shraberg, an expert in neurology and psychiatry, testified he had treated Mrs. Juge for headaches. He noted there was no evidence she struck her head during the accident and therefore he did not believe she had sustained a concussion. Although the initial headache she experienced immediately after the collision could have been related to the accident he felt the continuing headaches were caused by tension and depression. He believed Mrs. Juge suffered from depression as a result of her personal problems, including the emotional stress involved in caring for a seriously handicapped child.
Considering the foregoing evidence, we cannot say the trial court abused its discretion in granting an award of $5,000 to compensate Mrs. Juge for her physical and emotional injuries. Although it is apparent the discomfort she experienced immediately after the accident was caused by defendant’s negligence, there was no clear evidence showing back problems she experienced some three and a half years later were a result of the initial impact. Further, plaintiff failed to prove the headaches were caused by the accident in that Dr. Shraberg indicated the headaches were related to tension and depression.
The trial court awarded $824.12 for special damages. Appellants claim they are entitled to $3,079.14. The majority of the items claimed are medical expenses for the child. Because we have determined defendant is not responsible for the child’s condition there can be no recovery for these expenses. We find the trial court’s award of $824.12 is adequate compensation for expenses related to Mrs. Juge’s injuries.
In spite of the arguments set forth in appellants’ brief, it was not contended at oral argument the child’s condition was, in fact, caused or aggravated by the accident. Instead, appellants asserted Mrs. Juge should be compensated for the mental anguish she experienced during the period of time she thought the automobile accident caused the abnormal condition of her child, James Christopher. It was reasoned that without the accident the nature of her mental anguish relative to the child’s problems would have been different. To like effect, appellants argue a fair portion of the child’s medical expenses incurred to determine the cause of the condition should be recoverable as special damages.
Acknowledging the innovative approach, we do not believe there is any basis in law to support a damage award for mental anguish caused not by defendant’s act, but by conjecture. No authority for this proposition has been cited. It is simply not enough that Mrs. Juge may have thought the child’s problems was caused by the accident. During this time the cause was actually unknown and efforts were underway to diagnose the condition.
*1258 In conclusion, appellants failed to prove the accident was the legal cause of the child’s condition, therefore we certainly cannot allow recovery for mental anguish brought about only by her belief that the accident caused the damage. To do so would result in a limitless expansion of tort liability. Under appellants’ theory, in any given case it would be irrelevant whether or not the defendant’s actions were the legal cause of the plaintiff’s injury. If the plaintiff believed the injury to be caused by the defendant she would always be entitled to recover for the mental anguish associated with this belief.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are to be assessed against appellants.
AFFIRMED.

. There is a conflict in the testimony in that Dr. Rabalais’ records show the first bleeding incident to have occurred about eight days after the accident. Mrs. Juge said the bleeding happened a day or two after the accident.

. Although the disease is classified as an “inherited” disease, 80% of the persons contrab-ing it get it from a “new mutation,” i.e., there is no evidence of it elsewhere in the family.

. The record shows as of the date of trial Mrs. Juge had given birth to three other children. The first born after James died shortly after birth and the other two have developed normally. This indicates she gave birth to four children within a period of 3'/2 years.